UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 5: 11-152-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 13-7281-DCR-CJS |
| | ) | |
| | ) | |
| PHILLIP G. VICE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Phillip G. Vice has moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 52] The United States has moved the Court to dismiss Vice's motion, arguing that Vice knowingly and voluntarily waived his right to collaterally attack his guilty plea, conviction, and sentence. [Record No. 70] In accordance with local practice, the matter was referred to a United States Magistrate Judge for review and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On February 19, 2014, United States Magistrate Judge Candace Smith issued her report which recommended that Vice's motion to vacate be denied and that the United States' motion to dismiss be granted. [Record No. 103] Thereafter, Vice filed objections to the report. [Record No. 104] Having fully considered the record of this proceeding, including the portions of the Report and Recommendation to which Vice objects, the Court

agrees with the magistrate judge's analysis and conclusions. As a result, the United States' motion to dismiss will be granted and Vice's motion will be denied.

**I.**

In 2011, law enforcement received numerous complaints that Vice was selling drugs from his residence and that he possessed firearms despite being a convicted felon. [Record No. 82-2, pp. 20-21] In April and May 2011, Vice sold oxycodone pills to witnesses cooperating with law enforcement. [Record No. 82-2, p. 21] After obtaining a search warrant based on this and other information, law enforcement conducted a search of Vice's residence on May 25, 2011. Officers found hundreds of marijuana plants, hundreds of pills believed to be oxycodone and other drugs, and weapons during the search.[1] [Record No. 82-2, p. 31]

Vice subsequently was indicted by a federal grand jury, charged with manufacturing more than 1,000 marijuana plants; conspiring to distribute oxycodone; two counts of distributing of oxycodone; possessing oxycodone with intent to distribute; and being a felon in possession of firearms. [Record No. 1] Vice entered into a plea agreement in which he agreed to enter a guilty plea a lesser-included offense of Count One, manufacturing more than 100 marijuana plants. In exchange, the United States agreed to dismiss the remaining charges. [Record No. 35]

The terms of Vice's plea agreement are relevant to the issues raised in his current motion. According to Vice's plea agreement, law enforcement officers video-taped 942

---

[1] Law enforcement counted 1,042 marijuana plants in Vice's residence. However, the first 100 plants were not video-recorded because of a malfunction with the camera. [Record No. 32, p. 1]

marijuana plants growing on Vice's residence. [Record No. 35, p. 2] Vice admitted that the plants were marijuana, and that he grew the plants. [*Id*.] Because Vice had a prior felony drug conviction, the statutory minimum term of imprisonment under the plea agreement was ten years.[2] The plea agreement also contained a waiver provision, specifically stating that Vice "waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution." [Record No. 35, p. 4] After reviewing the relevant sentencing factors, then-Chief Judge Jennifer B. Coffman sentenced Vice to the statutory minimum term of 120 months imprisonment, followed by eight years of supervised release.[3] [Record No. 37] Vice did not file a direct appeal.

On June 4, 2013, Vice filed the current motion. [Record No. 52] He argues that: (i) his plea agreement was not knowing and voluntary; (ii) his trial attorney rendered ineffective assistance of counsel for various reasons; (iii) the search of his residence was unlawful; and (iv) the sentence imposed was unconstitutional. On December 4, 2013, Magistrate Judge Smith held a limited evidentiary hearing regarding the defendant's motion to address Vice's argument that trial counsel, Robert Abell, failed to file a notice of appeal, notwitstanding the specific waiver language contained of the plea agreement. The Court appointed counsel to represent Vice during the hearing. [Record No. 88] Following this hearing, Magistrate Judge Smith allowed the record to remain open for fourteen days so that Abell could file a

---

[2] Vice acknowledged that if he had proceeded to trial, he would have been exposed to a minimum term of imprisonment of twenty years on Count One based on the number of marijuana plants. 21 U.S.C. § 841(b)(a)(A)(vii).

[3] This matter was reassigned to the undersigned on March 29, 2013, following the retirement of Chief Judge Jennifer B. Coffman. [Record No. 42]

letter regarding the claim of ineffective assistance. [*See* Record No. 100-1.] On February 19, 2014, the magistrate judge issued her report and recommendation, finding that Vice's plea agreement was knowing and voluntary and that the waiver provision contained in the plea agreement is valid and enforceable.

Vice has objected to Magistrate Judge Smith's findings that: (i) the plea agreement precludes Vice's current attack on his plea, conviction, and sentence; (ii) the sentencing court adequately made a factual determination regarding the number of marijuana plants; and (iii) Vice did not expressly advise his counsel to appeal. He also argues that the magistrate judge erred in denying his motion to expand the record. The Court reviews *de novo* those portions of the Report and Recommendation to which Vice objects. *See* 28 U.S.C. § 636(b)(1)(C). Having examined the record and having made a *de novo* determination of the portions of the report and recommendation to which Vice objects, the Court agrees with the magistrate judge's recommendations concerning the issues raised by Vice's § 2255 motion. Additionally, Vice has not shown that a Certificate of Appealability should issue.[4]

**II.**

[A] prisoner in custody . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In seeking such relief, a

---

[4]A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), "a petitioner who has been denied relief in a district court 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (emphasis and brackets in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). Here, Vice has not made a substantial showing of a denial of a constitutional right. Likewise, he has not demonstrated that

prisoner may claim that the sentence was imposed in violation of the Constitution or federal law, that the court lacked jurisdiction to impose the sentence, that the sentence imposed was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *Id*. "To prevail on a § 2255 motion alleging a constitutional error, the movant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id*. (citations omitted).

A. **Waiver of Collateral Attack**

Vice objects to the magistrate judge's finding that the plea agreement's waiver language is valid and enforceable. He argues that neither the Court nor Attorney Abell adequately explained the waiver provision of his plea agreement, rendering his plea agreement involuntary. A valid waiver of the right to collaterally attack a conviction and sentence bars relief under a § 2255 motion. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, for a waiver to be valid, it must be knowing, intelligent, and voluntary. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). Rule 11 of the Federal Rules of Criminal Procedure requires the Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea agreement provision waiving the right to appeal or

---

the issues he now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further.

collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Complying with the provisions of Rule 11 is enough to demonstrate that the defendant entered into a waiver knowingly, voluntarily, and intelligently. *See United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Vice contends that he was equivocal in his answers during the change of plea hearing, indicating that he was not actually satisfied with his counsel's performance and that his plea agreement was not voluntary. Despite Vice's assertions, the Court verified that Vice was satisfied with his attorney's performance during his change of plea hearing:

> THE COURT: All right. Robert Abell is your attorney here. Are you fully satisfied with his advice, representation, and counsel to you?
>
> DEFENDANT VICE: Yeah. Yeah, I think so. About the part we didn't really discuss the other — if there's charges that could be brought against me, because I don't want to get locked upon th[ese] charges and then other charges come out.
>
> THE COURT: Well, I can't represent you, but I do want to know if you have any complaints about Mr. Abell's representation of you.
>
> DEFENDANT VICE: No.
>
> THE COURT: I mean, what I hear — you gave a qualified yes when I said, "Are you fully satisfied with his advice, representation and counsel?" Are you dissatisfied with him, or are you just dissatisfied with the message?
>
> DEFENDANT VICE: I'm not dissatisfied with his representation.
>
> THE COURT: At all?
>
> DEFENDANT VICE: No, ma'am.

[Record No. 66, pp. 6-7]

Vice also stated several times that he had read and understood the plea agreement:

> THE COURT: I want to know whether you have read or had someone read to you [the plea agreement and plea supplement].
>
> DEFENDANT VICE: Yes, ma'am.
>
> THE COURT: And you understand what's in both of them?
>
> DEFENDANT VICE: Yes, ma'am.

[Record No. 66, pp. 7-8, 16] The Court ensured at various points during the hearing that Vice wanted to proceed with a guilty plea, specifically stating that Vice was giving up his appellate rights:

> THE COURT: Do you understand that in this case, *even though you've given up your appellate rights*, the government hasn't, and so under certain circumstances the government may appeal any sentence?
>
> DEFENDANT VICE: Yes, ma'am.

[Record No. 66, p. 26 (emphasis added)]

Further, the United States summarized the plea agreement in layman's terms, noting that "Mr. Vice has waived the right to appeal and the right to attack collaterally, that is, file a separate lawsuit against his guilty plea, conviction, and sentence, including any order of restitution." [Record No. 66, pp. 13-14] The last sentence of the plea agreement, signed by Vice, states: "[t]he Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary." [Record No. 35]

Vice attested at his plea hearing that he had reviewed the plea agreement with his counsel, that he understood the agreement's provisions, and that his guilty plea was not the

result of coercion or threats. *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004); [*see also* Record No. 66, p. 19.] Vice demonstrated sufficient awareness of the relevant circumstances and likely consequences of his guilty plea, even though he indicated that he did not like the consequences.[5] *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).

Vice also contends that his hesitancy during the hearing indicates that his plea was not made voluntarily. However, when Judge Coffman detected hesitancy during the plea colloquy, she encouraged Vice to step away to speak to his counsel regarding his guilty plea. After conferring with his counsel, Abell explained to the Court that Vice was making a difficult decision, considering that his mandatory minimum term of incarceration was ten years. [Record No. 66, p. 20] Yet after conferring, both Vice and his counsel verified that the decision was the correct one for Vice. [Record No. 66, pp. 20-21] In short, Vice was aware of the relevant circumstances and the likely consequences of his guilty plea. *See United States v. Brown*, 96 F. App'x 380, 382 (6th Cir. 2004) (finding that a guilty plea was knowing and voluntary where the court detected hesitancy on the defendant's part and ordered a short recess to allow the defendant time to think about her guilty plea). That Vice displayed some hesitancy does not mean that his plea was involuntary. *See id.*

---

[5]

> THE COURT: Mr. Vice, is that fair to say, that the reason for your hesitation is that you're doing this, you've decided it's the right thing to do, but you still don't like it?
>
> DEFENDANT VICE: Yes, ma'am.

[Record No. 66, p. 21]

Under the totality of the circumstances, Vice's plea agreement — including his waiver of the right to collaterally attack his appeal — was knowing and voluntary. Vice was advised and aware of his rights and he confirmed that he understood the agreement. Judge Coffman explained the factual basis for the plea, and the record indicates that Vice was aware of the consequences of his guilty plea. Detecting hesitancy, she ensured that Vice had time to confer with counsel regarding the consequences of the plea, and the record indicates that he was sufficiently aware of the potential effects of his guilty plea. *See Brown*, 96 F. App'x at 382. In conclusion, an appropriate Rule 11 inquiry was conducted.

Moreover, Vice repeatedly and expressly stated that he was satisfied with his counsel's representation, that he was familiar with the term of the plea agreement, and that he understood those terms. *See United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) ("[A] defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge."). *See also United States v. Diaz*, 733 F.2d 371, 373 (5th Cir. 1984) (A defendant's prior attestation of voluntariness of his confession imposes on him a heavy burden; a defendant must show that his plea was the product of misunderstanding, duress, or misrepresentation by others as to make his plea constitutionally inadequate as a basis for imprisonment.) Vice has not made a showing that his plea agreement was not knowing and voluntary. Accordingly, the Court finds that the waiver provision in Vice's plea was valid and enforceable. The Court will grant the United States motion to dismiss Vice's § 2255 petition.

B.  **Number of Marijuana Plants**

Notwithstanding the valid and enforceable waiver of his right to bring this motion, *see In re Acosta*, 480 F.3d at 422, the magistrate judge substantively addressed all of Vice's claims and found that they lack merit. Yet Vice objects to the magistrate judge's findings regarding the number of marijuana plants that he admitted to growing. Specifically, he argues that the district court failed to determine that Vice grew over 100 marijuana plants. Even if this claim was not barred by his waiver provision, the Court agrees that this claim lacks merit.

As stated previously, the Indictment charged Vice with growing more than 1,000 marijuana plants. In his sentencing memorandum, counsel for Vice noted that an "essential term of the plea agreement fixed the number of marijuana plants attributable to Vice at 942," narrowly avoiding the threshold of 1,000 or more marijuana plants that would escalate Vice's mandatory minimum sentence from ten to twenty years. [Record No. 31, p. 4]  During his change of plea hearing, Vice admitted to growing marijuana plants:

> THE COURT:  Is it true that you grew more than 100 plants of marijuana?
>
> DEFENDANT VICE:  Yes, ma'am.
>
> THE COURT:  And do you admit that the — that the plants that were growing were, in fact, marijuana?
>
> DEFENDANT VICE:  I don't know if they were defined as plants. They were — under state law they would have been seedlings because they were only like this tall.  (Indicating).
>
> THE COURT:  Well, was it marijuana or was it weeds?
>
> DEFENDANT VICE:  It was marijuana.

[Record No. 66, p. 26] The record demonstrates that the Court stated several times throughout the change of plea hearing that Vice admitted growing more than 100 marijuana plants. [*Id.*, p. 9] During the sentencing hearing, the Court found that the Government had waived its arguments regarding seeking a higher plant count:

> THE COURT: I ruled that the — there was a waiver as to the plant count.
>
> MR. ABELL: Yes, Ma'am.
>
> THE COURT: And that was in your favor, and that was a big item in his favor because that means a 20-year mandatory minimum does not apply.
>
> MR. ABELL: Very much so.

[Record No. 93, p. 22]

Vice's argument that his plea was not knowing and voluntary because he was not aware of the drug quantity is also without merit. *See United States v. Valdez*, 362 F.3d 903 (6th Cir. 2004) (finding that a guilty plea was knowing and voluntary where the Court mentioned the drug quantity at least four times before accepting the plea). Here, the record plainly shows that the Court mentioned the number of plants at least five times before accepting Vice's plea. [*See* Record No. 66.] And the record establishes that Vice's plea was knowing and voluntary and that he understood the charges against him and the consequences of his plea.

Further, Vice's argument that his counsel was ineffective for failing to investigate whether the marijuana plants found during the search of Vice's residence constitute marijuana plants is unavailing.[6] *See United States v. Edge*, 989 F.2d 871 (6th Cir. 1993)

---

[6] Vice makes a perfunctory claim that the Court should have made specific factual findings

(defining a marijuana plant for the purposes of sentencing). The record establishes that Vice's attorney investigated whether the plants constituted "marijuana plants" under Sixth Circuit precedent. [Record No. 82-2, pp. 42-43] After Abell reviewed the evidence, including the videotape of the plants being counted, he advised Vice that "some of the [1,042] items might very well constitute a plant. But for the most of them it is impossible to tell; you simply cannot get a good enough look to tell one way or the other." [*Id.*, p. 36] He indicated to Vice that he would follow-up with the United States regarding the number of plants, a promise he clearly kept, considering that Vice pled guilty to more than 100 plants as opposed to more than 1,000 marijuana plants. He also provided Vice with the legal definition of marijuana plants so that he could better understand the import of this determination. [Record No. 82-2] Abell's investigation into the number of marijuana plants resulted in a mandatory minimum of ten years imprisonment rather than the twenty years Vice originally faced under Count One.

This Court agrees with the magistrate judge's finding that Vice's claim fails under both prongs of an ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that his counsel's performance was deficient, and that the deficient performance resulted in prejudice to the defendant). As noted above, there is no indication

---

regarding the plants, despite the fact that Vice freely admitted that the plants were marijuana. In so arguing, he misconstrues *Edge* and its progeny. *See Edge*, 989 F.2d at 879. In *Edge*, the defendant did not admit that the plants were marijuana plants, nor did the Court there find that the Government had waived its arguments regarding a higher number of plants. *Id.* at 874. Vice has provided no support for the argument that the Court must go beyond such a factual basis for a plea where a defendant has admitted the number of plants and that the plants constitute marijuana plants for the purpose of sentencing.

that Abell's performance was deficient. He thoroughly investigated the number of plants, identified the correct Sixth Circuit definition of marijuana plant, and provided that information to Vice. [*See* Record No. 82-2.] But even if Vice could demonstrate that his counsel's performance was deficient, he has failed to demonstrate any prejudice. By pleading guilty to the lesser-included offense of Count One, Vice ensured that the United States would dismiss the remaining five counts of the Indictment, and was exposed to a much lower statutory minimum on the marijuana charge.[7] Accordingly, the Court will overrule Vice's objection.

C. **Request to Appeal**

Despite the ultimate finding that Vice had waived his right to appeal or collaterally attack his sentence, Magistrate Judge Smith held a limited evidentiary hearing regarding whether Vice advised his counsel to appeal. As noted by the magistrate judge, the Sixth Circuit has held that failing to file an appeal after an express request by a defendant is *per se* ineffective assistance of counsel, even where a defendant has waived his right to appeal. *See Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012). Thus, to be entitled to relief, Vice must show by a preponderance of the evidence that he expressly requested that Counsel file a notice of appeal, and that Counsel failed to do so. *See Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Wright v. United States,* 624 F.2d 557, 558 (5th Cir.1980)).

---

[7] Related to this claim, Vice sought to expand the record to include the video-recording of law enforcement counting the plants. Magistrate Judge Smith denied the motion, finding that Vice failed to show good cause for the motion. [Record No. 103, p. 29] The Court finds no error with the Magistrate Judge's decision to deny this motion.

Vice testified during the evidentiary hearing that he asked Abell to file an appeal on July 26, 2012, during a recess at his sentencing hearing. [Record No. 103, p. 21] However, Vice could not remember or recount any details regarding this alleged request. [*Id.*] Conversely, Abell testified in detail regarding the discussion on July 26, 2012. He recalled that the discussion actually concerned a potential sentencing enhancement due to judicial fact-finding that occurred during the sentencing hearing. [*Id.*] This recollection is consistent with the transcript from the sentencing hearing, where Abell requested to confer with Vice regarding the Court's legal rulings concerning a possible enhancement. [Record No. 93, p. 20]

Abell testified that Vice never advised him to appeal. [Record No. 103, p. 21] Abell also testified that he would have filed a Notice of Appeal if Vice had requested, even the plea agreement contained a specific waiver of that right. [*Id.*] But Abell did not file an appeal; instead, he sent Vice a letter after the sentencing stating that he was closing his file, consistent with his ordinary practice when cases were closed. [*Id.*, p. 23] The magistrate judge correctly found Abell's testimony credible and consistent, and ultimately determined that Vice had never advised Abell to file an appeal. *See Regalado v. United States*, 334 F.3d 520, 526 (6th Cir. 2003) (affirming a district court's finding that a defendant never made an express request to appeal after weighing testimony from counsel and the defendant and finding counsel's testimony more credible). This Court agrees that Vice's claim that his counsel was ineffective for failing to file an appeal is without merit.

**III.**

Vice has not demonstrated that he is entitled to collateral relief under 28 U.S.C. § 2255. Likewise, he has not shown that this Court should issue a Certificate of Appealability on any claim. Accordingly, it is hereby

**ORDERED** as follows:

1) The United States' Motion to Dismiss [Record No. 70] is **GRANTED**.

2) The Report and Recommendation of Magistrate Judge Candace Smith [Record No. 103] is **ADOPTED** and **INCORPORATED** by reference.

3) Defendant Vice's objections to the Report and Recommendation [Record No. 104] are **OVERRULED**.

4) Defendant Vice's motion to vacate, set aside, or correct his sentence [Record No. 52] is **DENIED** and this matter is **DISMISSED** from the Court's docket. A separate Judgment shall issue this date.

5) A Certificate of Appealability shall not issue.

This 17th day of March, 2014.



Signed By:
Danny C. Reeves  DCR
United States District Judge